**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

**CIVIL ACTION NO. 05-62-C**

**RONALD JUSTICE, ET AL.,**                                                              **PLAINTIFFS,**

**V.**                          **MEMORANDUM OPINION AND ORDER**

**PHYSICIANS MUTUAL INSURANCE**
**COMPANY, ET AL.,**                                                              **DEFENDANTS.**

**\* \* \* \* \* \* \* \* \* \***

This matter is before the court on the plaintiffs' motion for class certification
(DE 60) and the defendants' motion for leave to file a response to the plaintiffs'
reply brief (DE 80).  The court, having reviewed the record and being otherwise
sufficiently advised, will deny both motions.

**I. Factual Background**

The plaintiffs, Ronald Justice, Bill Yarbor, and Michael Adams (collectively,
"plaintiffs"), are former insurance agents who, at various times, contracted with
the defendant insurance companies to sell Medicare supplement insurance in the
State of Kentucky.  The defendant, Physicians Mutual Insurance Company
("PMIC"), is a mutual insurance company with its principal place of business in
Omaha, Nebraska, and division offices in several locations including Louisville,
Kentucky.  The defendant, Physicians Life Insurance Company ("PLIC"), is a
Nebraska corporation that is fully owned by PMIC.  The defendant, Physicians
Mutual Services Corporation, is a Nebraska corporation that does not sell insurance

or do business in the State of Kentucky.

The Centers for Medicare and Medicaid Services in the United States Department of Health and Human Services have established a six-month open enrollment period during which insurance companies cannot deny Medicare supplement insurance coverage to persons age 65 and older or otherwise discriminate against such persons on the basis of age or health history. The purpose of this program is to facilitate the provision of affordable health care to citizens who would otherwise find it to be inaccessible.

The plaintiffs allege that agents of the defendants instructed them to deny coverage to senior citizens during this open enrollment period in violation of state and federal law and the plaintiffs' agent contracts. The circumstances under which the plaintiffs received this purported instruction vary. Justice entered into his agent agreement for the defendants in 1999, and he went on disability in 2002 following a heart attack. Justice claims that, in 2001, Louisville Division Manager Kevin Dennis told class members that the defendants "frowned on" agents selling supplement insurance to open enrollees with health problems. Justice also states that Dennis informed several agents that they needed to "write better quality business" at an agent meeting held in July of 2003. At a meeting held at Caesar's Casino in Indiana on August 12, 2003, Justice alleges that he and the 35 to 40 other agents in attendance[1] were specifically told to send open enrollees with

---

[1]The defendants assert that their records show that only 28 agents were present at the Caesar's meeting.

health problems to other insurance companies. He states that he received similar mandates from the defendants' home offices in Nebraska.

Yarbor became an agent for the defendants in July of 2001, and his employment was terminated for lack of production in November of 2004. He claims that, in July of 2001, Dennis told him to deny coverage to open enrollees, specifically stating that Yarbor should not "write the sickies."[2] He also asserts that similar instructions were given during regular Friday morning meetings at the Louisville division office.

Adams began working for the defendants in 1991 and was terminated in March of 2006. Like Yarbor and Justice, Adams testified in his deposition that he was instructed not to write open enrollees and to take that business to other insurance companies. He also claims he was chastised by the defendants' agents for writing too many "sick people," and he corroborated Justice's statements regarding the defendants' instructions at the Caesar's meeting in 2003.

The plaintiffs also cite the depositions of several of the defendants' representatives in which they state that insurance agents were told not to write senior citizens with health problems during the open enrollment period. In his deposition, Larry Gerdes, PMIC's Vice President of Agency Administration, also said that every sales agent had an identical contract and commission schedule.

---

[2]The parties, and apparently the insurance business generally, use "write" as a shorthand expression for "issue a policy to." The court adopts that usage in this opinion.

The plaintiffs filed a class action complaint on December 29, 2004, in Jefferson Circuit Court, and the defendants subsequently removed the case to this court.  The plaintiffs' original complaint stated claims for breach of contract and breach of the covenant of good faith and fair dealing.  The plaintiffs later amended their complaint to include three claims for the defendants' violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, and a claim for punitive damages.  On July 7, 2006, the plaintiffs filed the instant motion for class certification.

### II. Legal Analysis

### A. The Plaintiffs' Motion for Class Certification

The plaintiffs seek to certify the following group as a class:

> All persons licensed to sell insurance in the State of Kentucky who have signed an Agent Contract with Physicians Mutual Insurance Company, Physicians Mutual Life Insurance Company, or Physicians Mutual Services Company between 1999 and 2006.

The plaintiffs do not wish to certify the entire case as a class action.  Rather, they request certification only as to the following issues: (1) whether the defendants instructed class members to avoid selling Medicare supplement insurance to open enrollees with health problems; and (2) whether such instructions violated the class members' agent contracts and/or state and federal laws regarding the sale of Medicare supplement insurance.

### 1. Standard of Review

"When a person sues or is sued as a representative of a class, the court

must . . . determine by order whether to certify the action as a class action." Fed. R. Civ. P. 23(c)(1)(A).  When appropriate, an action may be brought or maintained as a class action with respect to particular issues. *Id.* at 23(c)(4).  The party seeking class certification bears the burden of proving that certification is proper, and a court must conduct a "rigorous analysis" into whether the prerequisites of Rule 23 are met before certifying a class. *In re American Med. Sys., Inc.*, 75 F.3d 1069, 1078-79 (6th Cir. 1996) (citing *General Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982)).  "Mere repetition of the language of Rule 23(a) is not sufficient. There must be an adequate statement of the basic facts to indicate that each requirement of the rule is fulfilled." *American Med.*, 75 F.3d at 1079 (quoting *Weathers v. Peters Realty Corp.*, 499 F.2d 1197, 1200 (6th Cir. 1974)).  While the court has broad discretion in deciding whether to certify a class, that discretion must be exercised within the framework of Rule 23. *American Med.*, 75 F.3d at 1079.

　　　*2. Class Action Requirements*

　　　No class that fails to satisfy all four prerequisites of Rule 23(a) may be certified, and each class meeting those prerequisites must also pass at least one of the tests set forth in Rule 23(b). *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998).  Rule 23(a) states that a class action may be maintained:

> only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the

representative parties will fairly and adequately protect the interests of the class.

The plaintiffs seek to pursue this case pursuant to Rule 23(b)(3), which states that a class action may be maintained if "questions of law or fact common to the class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  As a prerequisite to certification, the court must also determine that the class is sufficiently identifiable without being overly broad. *Mueller v. CBS, Inc.*, 200 F.R.D. 227, 233 (W.D. Pa. 2001) (citation omitted).

   *3. Discussion*

   The parties' arguments as to the elements of Rule 23 reveal a fundamental disagreement as to the relationship between the plaintiffs' class definition and the issue to be determined (that is, whether an illegal open enrollment instruction was given to the class members).  The defendants attack the class definition on the ground that not every member of the class *received* the alleged instruction at issue in this case.  The plaintiffs respond to this argument by re-stating that their inquiry is focused on whether an instruction was *given* because, if the class definition focused on agents who received the instruction, then it would improperly depend on a resolution of issues that are unique to each class member (which is, of course, precisely the defendants' point).  *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-78 (1974) (holding that inquiry into the merits is improper when deciding questions of class certification).

The thrust of the plaintiffs' argument appears to be that, because the defendants allegedly gave an illegal open enrollment instruction to some of their agents, it is appropriate to certify a class consisting of every agent under contract with the defendants during the time period in which the instructions were purportedly given.  To put it another way, the plaintiffs assert that, because the named plaintiffs were given an instruction that violated their contracts, and all of the class members had exactly the same contract, the entire class was therefore injured by the defendants' actions.  The conclusion reached by the plaintiffs does not follow from the factual premises they present.  Particularly where, as here, class-action plaintiffs seek monetary and not injunctive relief, it is inappropriate to allow plaintiffs with viable claims to establish liability on behalf of those who may not even have been harmed by a defendant.  Even if the defendants' conduct was wrongful, that fact would not entitle every person who could conceivably have been affected by that conduct to recover as a class member.

With this overarching analytical backdrop in mind, the court will now explore the plaintiffs' compliance with the express and implied requirements of Rule 23(a).

i. Class Definition

Although not specifically mentioned in Rule 23, the definition of the class is an essential prerequisite to maintaining a class action. *Roman v. ESB, Inc.*, 550 F.2d 1343, 1348 (4th Cir. 1976).  "If the vague and indefinite description of the purported class depends upon the state of mind of a particular individual, rendering

it difficult . . . to determine whether any given individual is within or without the alleged class, certification is not appropriate." *Gevedon v. Purdue Pharma*, 212 F.R.D. 333, 335-36 (E.D. Ky. 2002) (citation omitted). The plaintiffs' proposed class in this case is comprised of persons licensed to sell insurance in Kentucky who signed agent contracts with the defendants between 1999 and 2006. Whether a person is a member of this class may be easily ascertained by examining objective data and does not depend on subjective or individualized variations among the class members. Thus, the plaintiffs' proposed class is sufficiently definite.

The defendants argue that the class is indefinite because it is not comprised of agents who received an illegal instruction, it is too temporally expansive, and it is rife with issues that require individual determinations. The defendants' arguments have some merit, but their objections relate less to the adequacy of the class definition and more to other elements of Rule 23(a). The plaintiffs have crafted their class definition around agents who signed contracts with the defendants and their issue as whether an instruction was given, not received. Although this proposal is flawed in its own right, that defect does not manifest itself as an inadequacy in the class definition.

### ii. Numerosity

Analysis under subsection (a)(1) of Rule 23, commonly referred to as the numerosity requirement, turns on whether joinder of all alleged class members would be impracticable. *Gevedon*, 212 F.R.D. at 337. There is no strict numerical

test for determining impracticability of joinder.  *American Med.*, 75 F.3d at 1079.

The appropriate inquiry is whether the plaintiffs have sufficiently demonstrated the

existence of the number of persons they purport to represent.  *Gevedon*, 212

F.R.D. at 337.  The class representatives must show some evidence of or

reasonably estimate the number of class members.  *Schwartz v. Upper Deck Co.*,

183 F.R.D. 672, 681 (S.D. Cal. 1999).

The plaintiffs have represented that their class contains approximately 150

members and contend that, since this number of plaintiffs cannot be feasibly joined,

they have met the numerosity requirement.  In support, the plaintiffs have

submitted a document listing the proposed members of their class by name.  The

defendants again argue in opposition that the plaintiffs have failed to meet their

burden of showing numerosity because the plaintiffs do not limit their class to

agents who received the purported illegal instruction.  They then claim that, when

the class is properly defined, it is not large enough to satisfy Rule 23(a).  While this

may be the case, the plaintiffs' proposed class contains around 150 members.

Whether or not the defendants' hypothetical class complies with the numerosity

requirement is beside the point.

Since the court is of the opinion that the plaintiffs' proposed class is fatally

deficient as to other requirements of Rule 23(a), it will express no opinion as to

whether the plaintiffs have met their burden of showing that the class members

cannot be practicably joined.

iii. Commonality

Rule 23(a)(2) requires that common questions of law or fact regarding a

proposed class exist before a court may certify it.  The commonality test is

qualitative rather than quantitative.  That is, there need be only a single issue

common to all members of the class.  *American Med.*, 75 F.3d at 1080.  "It is not

every common question that will suffice, however; at a sufficiently abstract level of

generalization, almost any set of claims can be said to display commonality.  What

we are looking for is a common issue the resolution of which will advance the

litigation."  *Sprague*, 133 F.3d at 397.

The plaintiffs claim that common questions exist as to the following: (1)

whether the defendants instructed class members to refuse to sell Medicare

supplement insurance to senior citizens with health problems; and (2) if the

defendants did give such an instruction, whether it was in violation of state and

federal law and/or the agents' contracts.  The defendants counter by asserting that

the issues the plaintiffs seek to certify are not common to the proposed class, or, if

the issues are common, their resolution will not further the litigation of this action.

The plaintiffs have the better of the argument on this issue.  First, neither

party disputes that each member of the proposed class signed an identical agent

contract.  In *Bittinger v. Tecumseh Products Co.*, 123 F.3d 877, 884 (6th Cir.

1997), the Sixth Circuit held that the commonality requirement had been met

where each member of a plaintiff class was guaranteed lifetime benefits by a

collective bargaining agreement.  In the same sense, the similarity of the contracts

by the proposed class members here is a common question of fact that would

advance the litigation of this case.  Moreover, whether the open enrollment

instruction allegedly given by the defendants violated the plaintiffs' contracts or

federal and state law is a common question of law.  The plaintiffs have met their

burden of demonstrating compliance with Rule 23(a)(2).

### iv. Typicality

> Typicality determines whether a sufficient relationship exists between
> the injury to the named plaintiff and the conduct affecting the class,
> so that the court may properly attribute a collective nature to the
> charged conduct. . . .  Thus, a plaintiff's claim is typical if it arises
> from the same event or practice or course of conduct that gives rise to
> the claims of other class members, or if his or her claims are based on
> the same legal theory.

*American Meds.*, 75 F.3d at 1082.  A necessary consequence of the typicality

requirement is that the representatives' interests will be aligned with those of the

represented group, and in pursuing their own claims, the named plaintiffs will also

advance the interests of the class members. *Id.; see also Sprague,* 133 F.3d at

399 ("The premise of the typicality requirement is simply stated: as goes the claim

of the named plaintiff, so go the claims of the class.").

The plaintiffs claim that "[t]he class representatives typify the experiences

and claims of the unnamed class members in that the representatives were each

instructed to violate the same federal and state laws relating to Medicare

supplement insurance sales."  DE 60, at 30.  This argument is erroneous, however,

because the plaintiffs have not demonstrated that the unnamed class members

were instructed to violate state and federal law, as the named plaintiffs claim they

were.  Thus, there is no proof of a connection between the injuries asserted by the

named plaintiffs and the "experiences or claims" of other parties.  Indeed, the

defendants provide statements from two class members who aver that they were

never given any illegal instruction.  Further, the evidence presented by the plaintiffs

shows that the named representatives' claims are not particularly typical of the

class as a whole.  Justice, Yarbor, and Adams received the alleged oral instruction

at issue at different times and under different circumstances, and the plaintiffs do

not provide proof that a substantial number of other agents were present when the

instruction was given.[3]  As a result, it is unclear whether the defendants ever gave

this alleged instruction to all, or even a majority of, the members of the proposed

class.  The evidence accumulated by the plaintiffs falls short of demonstrating the

class-wide similarity of treatment that is necessary to satisfy the typicality

requirement.  While Justice, Yarbor, and Adams may indeed have colorable claims

against the defendants, there is no indication that the conduct of which they

complain extended to all persons covered by their class definition.  *See Sprague*,

133 F.3d at 399 (holding that the typicality requirement was not met when "a

named plaintiff who proved his own claim would not necessarily have proved

---

[3]For example, even if the plaintiffs' estimates are accurate, only 35-40 of the approximately 150 agents in the proposed class attended the meeting at Caesar's Casino where the illegal open enrollment instruction was allegedly given.  Moreover, the plaintiffs are able to identify only a few agents who regularly went to the Friday morning meetings at which unlawful instructions were purportedly given; the defendants present evidence that some members of the proposed class never attended these meetings at all.

12

anybody else's claim").

The plaintiffs respond with the argument that the fact that the defendants' instructions were not uniformly communicated is of no moment, so long as evidence of a pattern is present; the plaintiffs again cite *Bittinger* in support of this proposition.  In *Bittinger*, the class at issue consisted of retired hourly workers of the defendant corporation whose insurance benefits expired at the termination of a collective bargaining agreement; these class members claimed that benefits they were promised had been improperly cut off by the defendants.  In holding that the typicality requirement had been met despite the fact that the promises on which the plaintiffs relied "were not uniformly communicated by the defendants," the Sixth Circuit stated: "The plaintiffs' evidence appears to follow a pattern . . . . More importantly, Bittinger – *like each class member* – contends that Tecumseh originally planned to provide lifetime, fully-funded benefits to retirees, as a general matter.  That the evidence varies from plaintiff to plaintiff would not affect this basic claim."  *Id.* at 884 (emphasis added).

In this case, however, not all of the class members allege that they were given any illegal instruction by the defendants.  There is also not a systematic course of conduct here that would suggest that such an instruction was the policy of the defendants.  This is not a case in which the alleged instruction was circulated officially to all of the defendants' insurance agents.  In contrast, the "pervasive pattern" of which the plaintiffs speak consists of communications given intermittently to small groups of class members on only a few occasions.  As this

case presents a situation where a significant number of class members may not

even have a claim against the defendants, *Bittinger* is clearly distinguishable.

The Sixth Circuit's recent decision in *Daffin v. Ford Motor Co.*, 458 F.3d 549

(6th Cir. 2006), is also not to the contrary.  In *Daffin*, the Court of Appeals upheld

the district court's certification of a class of "all 1999 or 2000 Mercury Villager

owners and lessees who owned or leased their vans during their van's initial

warranty period." *Id.* at 550.  The class members' theory was that the defendant

breached its express warranty by providing vehicles with defectively designed

throttle body assemblies.  The Sixth Circuit noted that Daffin's claim was typical of

the class she purported to represent despite the fact that she had experienced a

problem (accelerator sticking) that other members of the class had not: "The mere

fact that Daffin's throttle body assembly stuck, while other class members'

throttles have not stuck, does not render Daffin atypical. . . .  Daffin and the other

class members' claims arise from the same practice . . . , the same defect . . . , and

are based on the same legal theory . . . ." *Id.* at 552-53.

Unlike the class members in *Daffin*, the claims of the plaintiffs in this case

are not based on the same practice or defect; the only element that is

unquestionably shared by all the class members here is the sameness of their agent

contracts.  Any analogy to *Daffin* is therefore incomplete.  The case at hand more

closely resembles a situation where 150 persons own the same automobile, a

handful of which are defectively assembled.  A class action certifying all 150

14

automobile owners as class members based on the happenstance that other owners

of the same vehicle received a substandard product would be improper since the

experience of the injured parties would in no way typify the experiences of those

who suffered no harm.  Correspondingly, the plaintiffs' contention that their claims

are typical of those of the other class members in this case is without merit.

### v. Adequacy of Representation

The plaintiffs' proposed class also fails the adequacy-of-representation test

of Rule 23(a)(4).  To satisfy this requirement, class representatives must have

common interests with unnamed members of the class and must vigorously

prosecute the interests of the class through qualified counsel.  *Gevedon,* 212

F.R.D. at 340; *see also Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625-26

(1997) (citations omitted) ("A class representative must be part of the class and

possess the same interest and suffer the same injury as the class members.").  The

adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest

between named parties and the class they seek to represent.  *Amchem*, 521 U.S.

at 625 (citing *Falcon*, 457 U.S. at 157-58 n.13).

The court cannot conclude that the named plaintiffs will adequately represent

the class because there has been no showing that they have suffered the same

injury as the proposed class members.  As previously noted, the plaintiffs have not

even produced evidence demonstrating that every member of the class has suffered

an injury.  There is, therefore, a clear conflict of interest among the class

constituents.  Moreover, a list of the agents comprising the membership of the

proposed class furnished by the plaintiffs indicates that Scott Bodgon, and his wife,

Andrea Bogdon, are included in the class the plaintiffs wish to certify.  According to

the plaintiffs, however, Scott Bogdon, as former Assistant Division Manager of the

defendants' Louisville office, also allegedly issued the illegal enrollment instruction

to other members of the class.  Thus, if this case were certified as a class action

and the plaintiffs prevailed, their success could result in a finding that Bogdon

violated state and federal law.  The fact that one member of the proposed class and

the husband of another may be exposed to liability if the plaintiffs won their case

also militates against a finding of adequacy of representation.[4]  For these reasons,

the court finds that the plaintiffs have failed to satisfy Rule 23(a)(4).

*4. Conclusion*

Because the plaintiffs have failed to show that their proposed class meets

the requirements of Rule 23(a), the court must deny their motion for class

certification.

**B. The Defendants' Motion for Leave**

The defendants have moved the court for leave to respond to the plaintiffs'

---

[4]The defendants claim that Kevin Dennis is also included in the class
definition submitted by the plaintiffs.  Dennis's name, however, is noticeably
absent from the list of agents making up the proposed class provided by the
plaintiffs.  Although his inclusion in the plaintiffs' class would certainly deepen the
conflict between the named plaintiffs and the other class members, the court finds
that, given the resolution of the adequacy-of-representation issue, it need not rule
as to whether Dennis does or does not fall within the plaintiffs' class definition.

reply brief for the purpose of clarifying the record based on statements made by the plaintiffs in their reply brief, and the plaintiffs have opposed the defendants' motion.  As neither the Federal Rules of Civil Procedure nor the Local Rules permit surreplies, and because the court found it unnecessary to consider the defendants' surreply in resolving the plaintiffs' motion for class certification, the court will deny the defendants' motion for leave and will order the defendants' response to the plaintiffs' reply stricken from the record.

**III. Conclusion**

Accordingly,

**IT IS ORDERED** that the plaintiffs' motion for class certification (DE 60) is **DENIED**.

**IT IS FURTHER ORDERED** that the defendants' motion for leave to file a response to the plaintiffs' reply brief (DE 80) is **DENIED** and the defendants' response to the plaintiffs' reply brief is **STRICKEN** from the record in this action.

Signed on  November 27, 2006

**Jennifer B. Coffman, Judge**
**United States District Court**

17