UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

**CIVIL ACTION NO. 05-62-C**

**RONALD JUSTICE, ET AL.,**                                                                                  **PLAINTIFFS,**

**V.**                    **MEMORANDUM OPINION AND ORDER**

**PHYSICIANS MUTUAL INSURANCE**
**COMPANY, ET AL.,**                                                                               **DEFENDANTS.**

\* \* \* \* \* \* \* \* \* \*

This matter is before the court on the defendants' motion for summary judgment, DE 96. The court, having reviewed the record and being otherwise sufficiently advised, will grant in part the defendants' motion and will direct that the parties present oral arguments on the remaining issues, including jurisdiction, at the pretrial conference on April 21, 2008.

**I.**     **Background**

The plaintiffs, Ronald Justice, Bill Yarbor, and Michael Adams, are former insurance agents who, at various times, contracted with the defendant insurance companies to sell Medicare supplement insurance in the Commonwealth of Kentucky.

The Centers for Medicare and Medicaid Services in the United States Department of Health and Human Services have established a six-month open enrollment period during which insurance companies cannot deny Medicare

1

supplement insurance coverage to persons age 65 and older or otherwise discriminate against such persons on the basis of age or health history. The purpose of this program is to facilitate the provision of affordable health care to citizens who would otherwise find it to be inaccessible.

The plaintiffs allege that agents of the defendants instructed them to deny coverage to senior citizens during this open enrollment period in violation of state and federal law and the plaintiffs' agent contracts. The circumstances under which the plaintiffs allegedly received this instruction vary. Justice entered into his agent agreement for the defendants in 1999, and he went on disability in 2002 following a heart attack. Justice claims that, in 2001, Louisville Division Manager Kevin Dennis told class members that the defendants "frowned on" agents selling supplement insurance to open enrollees with health problems. Justice also states that Dennis informed several agents at an agent meeting held in July 2003 that they needed to "write better quality business." Justice alleges that, at a meeting held at Caesar's Casino in Indiana on August 12, 2003, he and the other agents in attendance were specifically told to send open enrollees with health problems to other insurance companies. He states that he received similar mandates from the defendants' home offices in Nebraska.

Yarbor became an agent for the defendants in July 2001, and his employment was terminated for lack of production in November 2004. He claims that, in July 2001, Dennis told him to deny coverage to open enrollees, specifically

stating that Yarbor should not "write the sickies."[1]  He also asserts that similar instructions were given during regular Friday morning meetings at the Louisville division office.

Adams began working for the defendants in 1991 and was terminated in March 2006.  Adams testified in his deposition that, like Justice and Yarbor, he was instructed not to write open enrollees and to take that business to other insurance companies.  He also claims he was chastised by the defendants' agents for writing too many "sick people," and he corroborated Justice's statements regarding the defendants' instructions at the Caesar's meeting in 2003.

The plaintiffs also cite the depositions of several of the defendants' representatives in which they state that insurance agents were told not to write senior citizens with health problems during the open enrollment period.

The plaintiffs filed a class action complaint on December 29, 2004, in Jefferson Circuit Court, and the defendants subsequently removed the case to this court.  The plaintiffs' original complaint stated claims for breach of contract and breach of the covenant of good faith and fair dealing.  The plaintiffs later amended their complaint to include three claims for violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, and a claim for punitive damages based on the tort of outrage.  On November 28, 2006, the court denied the plaintiffs' motion for class certification.

---

[1] The parties, and apparently the insurance business generally, use "write" as a shorthand expression for "issue a policy to."  The court adopts that usage in this opinion.

## II. Legal Standard

Summary judgment is appropriate only when there are no genuine issues of material fact and the moving party is entitled to a judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The moving party can satisfy its burden by demonstrating an absence of evidence to support the non-moving party's case. *Id*. at 324-25. To survive summary judgment, the non-moving party must come forward with evidence on which the jury could reasonably find in its favor. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242 (1986). The non-moving party must present more than a mere scintilla of evidence to defeat a motion for summary judgment. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989); Fed. R. Civ. Pro. 56(e). The court must view all of the evidence in the light most favorable to the party opposing summary judgment. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## III. Defendants' Motion for Summary Judgment

### A. RICO Claims (Counts IV, V, and VI)

In order to prove a RICO violation, a plaintiff must show "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985) (footnote omitted).

#### 1. Predicate Acts of Mail and Wire Fraud

"In order to establish 'racketeering activity' the plaintiffs must allege a predicate act." *Kenty v. Bank One, N.A.*, 92 F.3d 384, 389 (6th Cir. 1996). The

plaintiffs allege mail and wire fraud, which "are included in the definition of 'racketeering activity' in [18 U.S.C.] § 1961." *Advocacy Org. for Patients and Providers v. Auto Club Ins. Ass'n*, 176 F.3d 315, 322 (6th Cir. 1999). "The elements of mail and wire fraud are: (1) a scheme to defraud, and (2) use of the mails, or of an interstate electronic communication, respectively, in furtherance of the scheme." *Id.* (citing *United States v. Brown*, 147 F.3d 477, 483 (6th Cir. 1998), *cert. denied*, 525 U.S. 918 (1998)).

The defendants assert that the plaintiffs have not sufficiently pled the predicate acts of mail and wire fraud. Specifically, the defendants state that (1) "[w]hile the Plaintiffs allege the existence of a scheme or artifice to defraud, they do not identify any 'false or fraudulent pretenses, representations or promises' allegedly made by Physicians Mutual"; (2) the plaintiffs' "claim that Physicians instructed agents to engage in practices that were allegedly contrary to law does not satisfy the elementary element of a scheme to defraud for a false statement"; and (3) the plaintiffs have failed "to identify any evidence whatsoever that the mails or interstate electronic communication were used." DE 106, 11; DE 96-2, 22-23.

Rule 9(b) of the Federal Rules of Civil Procedure states that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." "The Sixth Circuit reads rule 9(b)'s requirement 'liberally, . . . requiring a plaintiff, at a minimum, to allege the time, place, and

5

content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud.'" *Advocacy Org. for Patients and Providers*, 176 F.3d at 322 (citing *Coffey v. Foamex L.P.*, 2 F.3d 157, 161-62 (6th Cir. 1993) (internal quotation marks and citations omitted)).  In the context of mail and wire fraud, "the plaintiffs must allege with particularity a 'false statement of fact made by the defendant which the plaintiff relies on'" and "'the facts showing the plaintiff's reliance on the defendant's false statement of fact'" or, "[a]lternatively, the plaintiff may allege an omission on which he or she relied." *Kenty*, 92 F.3d at 390 (citing *Blount Fin. Servs., Inc. v. Walter E. Heller & Co.*, 819 F.2d 151, 153 (6th Cir. 1987)).

Regarding Count IV, paragraphs 122 and 123 of the first amended complaint state, without citing specific facts, that the defendants "transmitted writings, signs, signals, pictures or sounds by means of the United States mails and/or by means of wire, radio, or television communication in interstate commerce" in furtherance of "a scheme or artifice to defraud Plainitiff and other agents of Defendants." DE 49, 31.  Regarding Count IV, Paragraph 131 states that "Defendants . . . and other as yet unknown agents, servants and/or representatives of said Defendants have on repeated occasions, knowingly used, or caused to be used, the interstate wires to execute a scheme to defraud Plaintiff and others."  DE 49, 33.  Regarding Count V, paragraph 138 states that "Defendants and other as yet unknown agents, servants and/or representatives of said Defendants . . . have

6

on repeated occasions, used or caused to be used, the United States Mail to execute a scheme to defraud Plaintiff and others." DE 49, 34. The plaintiffs further assert that they have alleged mail and wire fraud with specificity through the deposition testimony of Justice, in which he "provided detailed information about what occured prior to and during the agent meeting held at Caesar's Casino in Elizabeth, Indiana, in August, 2003"; "testified about who was there, who instructed plaintiffs to avoid unhealthy open enrollees, and what some agents thought about that improper instruction"; and "testified about his reliance on the representations made by executives from defendants' home office." DE 102, 42.

     The plaintiffs' RICO claims predicated on mail and wire fraud must fail because the plaintiffs have failed to point to any false statements of fact or omissions on which the plaintiffs relied. *Kenty*, 92 F.3d at 390. Even assuming that the defendants instructed the plaintiffs to violate the law in meetings at Caesar's Casino and elsewhere, which the court must assume for purposes of summary judgment, such statements are instructions to break the law and not "false statements of fact" or "omissions" that deceived the plaintiffs. *See id.* at 389-90 ("A scheme to defraud consists of '[i]ntentional fraud, consisting in deception intentionally practiced to induce another to part with property or to surrender some legal right, and which accomplishes the designed end'" (quoting *Bender v. Southland Corp.*, 749 F.2d 1205, 1216 (6th Cir. 1984).). *See also Central Distributors of Beer, Inc. v. Conn*, 5 F.3d 181, 184 ("Thus, the defendant

7

must make a false statement or omission of fact *to the plaintiff* to support a claim of wire fraud or mail fraud as a predicate act for a RICO claim" (emphasis in original).). Because the plaintiffs have not provided any specific evidence that they were deceived, as opposed to evidence that they were instructed to act unlawfully or deceive others, they cannot prove the predicate acts of mail and wire fraud. Consequently, the defendants are entitled to judgment as a matter of law on the RICO claims premised on these predicate acts.

### 2. Breach of Implied Covenant of Good Faith and Fair Dealing as a Predicate Act

Count VI, after invoking RICO in paragraphs 144 and 145, states, at paragraph 148 of the first amended complaint, that "[a]s a result of said Defendants' bad faith and breach of their implied obligations of good faith and fair dealing, Plaintiffs have been damaged and are entitled to recover compensatory damages from Defendants." DE 49, 34-35.

"Only those acts itemized in 18 U.S.C. § 1961(1) can constitute predicate offenses for RICO violations. . . . [Allegations] . . . involving breach of contract, anticipatory repudiation and corporate management disagreements . . . cannot support a RICO violation." *Frank v. D'Ambrosi*, 4 F.3d 1378, 1385 (6th Cir. 1993). Because 18 U.S.C. § 1961(1) does not include breach of the implied covenant of good faith and fair dealing, any RICO claim by the plaintiffs predicated on such a breach must fail. Consequently, the defendants are entitled to judgment as a matter of law as to the RICO claim in Count VI.

### 3. *Remaining RICO Issues*

Because the defendants are entitled to judgment as a matter of law as to all of the plaintiffs' RICO claims inasmuch as the plaintiffs have not pled sufficient predicate acts, it is unnecessary to determine whether McCarran-Ferguson preemption applies or whether the plaintiffs have otherwise sufficiently pled their RICO claims.

## IV. Jurisdictional Issues and Remaining Motions

The RICO claims having been dismissed, the court turns to the basis of federal jurisdiction. The defendants removed this action from state court, alleging diversity jurisdiction based in part on an amount in controversy exceeding $75,000. In paragraph 8 of their original state-court complaint, however, the plaintiffs denied that damages exceed such an amount. The parties will be directed to address this dispute at the pretrial conference. If found to fall short of such an amount in controversy, this matter will be remanded to state court.

The court will also hear arguments on the remaining motions, DE 96 and DE 97, at the pretrial conference.

## V. Conclusion

Accordingly,

**IT IS ORDERED** that the defendants' motion for summary judgment, DE 96, is **GRANTED** as to the RICO claims but the remaining issues will be heard at the pretrial conference.

**IT IS FURTHER ORDERED** that parties shall present oral arguments on the remaining issues, including jurisdiction, at the pretrial conference on April 21, 2008, at 10:00 a.m.

Signed on  April 14, 2008

*Jennifer B Coffman*
**Jennifer B. Coffman, Judge**
**United States District Court**