**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

**CIVIL ACTION NO. 05-62-C**

**RONALD JUSTICE, ET AL.,**                                                                 **PLAINTIFFS,**

**V.**                         **MEMORANDUM OPINION AND ORDER**

**PHYSICIANS MUTUAL INSURANCE**
**COMPANY, ET AL.,**                                                                         **DEFENDANTS.**

\* \* \* \* \* \* \* \* \* \*

This matter is before the court on the plaintiffs' motion to remand. DE 115. The court will also construe part of the defendants' response, DE 116, as a motion to dismiss the remaining state-law claims of plaintiff Adams. The court, having reviewed the record and being otherwise sufficiently advised, will grant the plaintiffs' motion in part, deny the plaintiffs' motion in part, and grant the defendants' motion.

**I.      Background**

The plaintiffs, Ronald Justice, Bill Yarbor, and Michael Adams, are former insurance agents who, at various times, contracted with the defendant insurance companies to sell Medicare supplement insurance in the Commonwealth of Kentucky. Defendant Physicians Mutual Insurance Company ("PMIC") is a mutual insurance company with its principal place of business in Omaha, Nebraska, and division offices in several locations, including Louisville, Kentucky. Defendant

1

Physicians Life Insurance Company ("PLIC") is a Nebraska corporation that is fully owned by PMIC. Defendant Physicians Mutual Services Corporation ("PMSC") is a Nebraska corporation that does not sell insurance or do business in the Commonwealth of Kentucky.

The Centers for Medicare and Medicaid Services in the United States Department of Health and Human Services have established a six-month open enrollment period during which insurance companies cannot deny Medicare supplement insurance coverage (such policies are a form of "Medigap" policy) to persons age sixty-five and older or otherwise discriminate against such persons on the basis of age or health history. The purpose of this program is to facilitate the provision of affordable health care to citizens who would otherwise find it to be inaccessible. The plaintiffs allege that agents of the defendants instructed them to deny coverage to certain senior citizens during this open enrollment period who were perceived to be higher risks (allegedly referred to by the defendants as "sickies") in violation of state and federal law and the plaintiffs' agent contracts, although the circumstances under which the plaintiffs allegedly received this instruction vary.

Plaintiff Justice and Yarbor filed a class action complaint on December 29, 2004, in Jefferson Circuit Court, and the defendants subsequently removed the case to this court. The plaintiffs' original complaint stated claims for breach of contract and breach of the covenant of good faith and fair dealing in relation to

alleged non-reimbursement of commissions for the first two months of new policies sold and allegedly unlawful restrictions on the sale of open enrollment Medigap policies. The plaintiffs later amended their complaint, adding plaintiff Adams, three claims for violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, and a claim for punitive damages based on the tort of outrage. On November 28, 2006, the court denied the plaintiffs' motion for class certification. On April 15, 2008, the court granted summary judgment as to the plaintiffs' RICO claims but did not rule on the part of the defendants' summary judgment motion that dealt with the remaining state-law claims. The court also did not rule on the plaintiffs' motion for partial summary judgment. Instead, the court cancelled the jury trial that was scheduled for May 20, 2008, and afforded the plaintiffs the opportunity to file a motion to remand.

## II.     Legal Standard

There are two possible bases for federal jurisdiction: diversity and federal question. For the court to have diversity jurisdiction, the citizenship of all plaintiffs must be different from that of all defendants and the amount in controversy must exceed $75,000. 28 U.S.C. § 1332. A federal question exists when an action arises "under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. If the court lacks subject matter jurisdiction at any time before final judgment, then the case must be remanded. 28 U.S.C. § 1447(c).

"If at any time before final judgment it appears that the district court lacks

subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). As the removing party, the defendant bears the burden of proving the existence of federal jurisdiction. *Eastman v. Marine Mechanical Corp.,* 438 F.3d 544, 550 (6th Cir. 2006)*; Long v. Bando Mfg. of Am. Inc.*, 201 F.3d 754, 757 (6th Cir. 2000). Removal statutes are construed narrowly, and doubts about the propriety of removal are resolved in favor of remand. *Long*, 201 F.3d at 757*.*

**III.   Analysis**

   **A.   Federal Question Jurisdiction and Supplemental Jurisdiction**

With the dimissal of the RICO claims, no claims arising under federal law remain in the present action. The court "may decline to exercise supplemental jurisdiction over a [state-law] claim . . . [if the court] has dismissed all claims over which it has original jurisdiction . . . ." 28 U.S.C. § 1367(c)(3). Moreover, "generally, if the federal claims are dismissed before trial . . . the state claims should be dismissed as well." *Landefield v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993) (internal citations and quotation marks omitted). *See also United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966) ("[If exercising supplemental jurisdiction does not further] considerations of judicial economy, convenience and fairness to the litigants[,] a federal court should hesitate to exercise jurisdiction over state claims . . . . Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.") (citations

omitted).

In the present matter, while the court is not inclined to exercise supplemental jurisdiction after considering the factors presented in *Landefield* and *Gibbs*, it cannot dismiss or remand the remaining state-law claims without also considering diversity jurisdiction because, unlike supplemental jurisdiction, diversity jurisdiction is not discretionary. *See, e.g.*, *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 356 (1988) (noting that diversity jurisdiction "is not discretionary"); *Musson Theatrical, Inc. v. Federal Express Corp.*, 89 F.3d 1244, 1253 (6th Cir. 1996).

**B.    Diversity Jurisdiction**

The present matter was originally removed by the defendants on grounds of diversity jurisdiction. At that time, instead of filing a motion to remand, the plaintiffs filed an amended complaint adding plaintiff Adams, including the federal RICO claims that have now been dismissed, and the outrage claim. The plaintiffs do not contest that diversity jurisdiction's diversity-of-citizenship requirement is met. Instead, they contend that its amount-in-controversy requirement is not met.

"[J]urisdiction is decided as of the time of removal." *Rogers v. Wal-Mart Stores, Inc.*, 230 F.3d 868, 873 (6th Cir. 2000). The defendants cite cases for the proposition that "initial jurisdictional defects can be cured by subsequent events or pleadings." DE 116-3, at 4. It is possible for initial jurisdictional defects to be cured, but the cases cited by the defendants deal with situations unlike the present one and, therefore, do not justify departing from the long-standing rule stated in

5

*Rogers*. For example, *AmSouth Bank v. Dale*, 386 F.3d 763, 777-80 (6th Cir. 2004) applies the limited exception allowing dismissal of a non-diverse defendant to maintain diversity jurisdiction, which is not applicable here. In *Connectu LLC v. Zuckerberg*, 522 F.3d 82, 86, 96 (1st Cir. 2008), the plaintiff's filing of an amended complaint stating a federal claim overcame any jurisdictional problem with the original complaint, which was originally filed in federal court and invoked diversity jurisdiction, where subject matter jurisdiction had not yet been contested by the defendants. *Zuckerberg* is not applicable here because there are no remaining federal claims in the instant case, which, unlike *Zuckerberg*, originated in state court and was removed by the defendants.

     The original complaint contains claims for breach of contract regarding (1) the defendants' alleged nonpayment of commissions due the plaintiff for the first two months of new policies sold, and (2) lost commissions due to the defendants' alleged instruction to the plaintiffs barring them from selling Medigap policies to "sickies" during open enrollment, as well as a claim for breach of the implied covenant of good faith and fair dealing. The original complaint also asserts that the damages for each plaintiff are less than $75,000. Moreover, the plaintiffs now concede that the claim for breach of the covenant of good faith and fair dealing cannot sound in tort under Kentucky law. *See* DE 115, at 17 (citing *Barton v. United Parcel Serv.*, 175 F. Supp. 2d 904, 910 (W.D. Ky. 2001)). *See also Ennes v. H & R Block Eastern Tax Servs., Inc.*, 2002 WL 226345, at *4 (W.D. Ky. Jan.

11, 2002) ("Kentucky courts have not extended the tort action for breach of the covenant of good faith and fair dealing to non-insurance contracts."). Consequently, for purposes of determining whether the amount-in-controversy requirement was met at the time of removal, the court will only analyze whether the two breach-of-contract claims and the contract claim for breach of the implied warranty of good faith and fair dealing satisfy the jurisdictional amount.

"Generally, since the plaintiff is master of the claim, a claim specifically less than the federal requirement should preclude removal." *Gafford v. General Elec. Co.*, 997 F.2d 150, 157 (6th Cir. 1993) (citing *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 294 (1938)). This general rule is not absolute, however.

> "[W]here 'a plaintiff alleges an amount in controversy below the jurisdictional amount' and where there is an applicable state counterpart to Fed. R. Civ. P. 54(c)[, as there is in Kentucky,] that 'might enable [the] plaintiff to claim in her complaint an amount lower than the federal amount in controversy but nevertheless seek and recover damages exceeding the amount prayed for,' the applicable burden of proof for the defendant is '"more likely than not."'"

*Ratliff v. Merck & Co., Inc.*, 359 F. Supp. 2d 571, 575 (E.D. Ky. 2005) (citing *Rogers*, 230 F.3d at 871). Moreover, in *Ratliff*, the court stated that "because the Plaintiffs' complaint alleges that damages will not exceed $75,000, Plaintiffs are judicially estopped from taking an inconsistent position in the future" and that if the "Plaintiffs later amend their complaint to seek in excess of $75,000, Defendant may, at that time, remove this action to federal court and seek appropriate

7

attorneys' fees and sanctions if warranted." *Id.* at 576. The court will also consider in the alternative whether the defendants have established by a preponderance of the evidence that the jurisdictional amount is satisfied by the original complaint.[1]

In the case of a putative class action, which this case was at the time of removal, the defendants need only show that one plaintiff has damages over the jurisdictional amount. *Olden v. LaFarge Corp.*, 383 F.3d 495, 499, 502, 512 (6th Cir. 2004). Because the only claims in the original complaint that are legally cognizable under Kentucky law are contract claims, the court will ignore the defendants' arguments and cases cited that deal with tort claims or punitive damages. The court also will not consider the prospect of attorney's fees in determining whether the amount-in-controversy requirement is met because it does not find it "more likely than not" that the plaintiffs will be awarded attorney's fees either by this court or a state court on remand.

In their notice of removal the defendants argue that plaintiff Justice's contract-based claims alone exceed the jurisdictional amount. For support, the

---

[1] In *Ratliff,* the Eastern District of Kentucky remanded a putative class action lawsuit after determining by a preponderance of the evidence that the defendant had not demonstrated that the amount-in-controversy requirement was met. *Ratliff*, 359 F. Supp. 2d at 578-79. *See also Gafford v. General Elec. Co.*, 997 F.2d 150, 158 (6th Cir. 1993) (noting that the "more likely than not" test is equivalent to the "preponderance of the evidence" test). The plaintiff in *Ratliff*, "on behalf of himself and all others similarly situated," sought "damages for alleged violations of the Kentucky Consumer Protection Act, fraud, negligence, and unjust enrichment arising from Defendant's advertising and marketing of VIOXX to consumers in Kentucky." *Id.* at 573.

defendants cite an affidavit from Nancy Alstadt, supervisor of accounting support services at PMIC, which states that the decline in income for Justice amounted to more than $100,000 for 2000 though 2005. DE 1-3. Alstadt's affidavit lists Justice's "non-employee compensation" – commission income and "total other income" (prizes and commissions) – for each year from 1997 through 2004. During Justice's "high years," 1997 through 1999, he averaged $51,312 per year. The defendants then propose totaling the difference between this average and Justice's actual income for each year from 2000 through 2004, which yields a total of $103,915. The court, however, questions this approach. First, according to the original complaint, the instructions not to write open enrollment policies to "sickies" began in 2002 and, while the court does not have sufficient information to determine how much Justice's lost compensation was from lost Medigap commissions as opposed to lost commissions for the first two months of new policies, it may be significant. Second, Justice had a heart attack in June 2003, an event independent of the defendants' alleged breaches that may also have diminished his income. Therefore, the court finds that Alstadt's affidavit may overstate the amount in controversy in Justice's contract claims by more than the $28,915 by which it asserts the $75,000 jurisdictional amount is exceeded. Consequently, the court does not find the defendants in their notice of removal met their burden to show the plaintiffs' original complaint exceeds the jurisdictional amount by a preponderance of the evidence.

The defendants also point to a report by Michael P. Kelsay, Ph.D., dated January 27, 2005, which presents an appraisal of the economic losses of each of the plaintiffs due to the defendants' alleged breaches. The defendants vigorously contest the reliability of this report in a motion in limine. *See* DE 98-2, at 5-19. Accordingly, in light of the federalism concerns that require removal statues to be construed narrowly and doubts about the propriety of removal to be resolved in favor of remand, *Long*, 201 F.3d at 757, the court finds that the defendants cannot satisfy their burden to show the damages asserted in the original complaint "more likely than not" exceed the jurisdictional amount by pointing to the conclusions found in Kelsay's report.

**C.     Remand and Dismissal**

As the Supreme Court noted in *Cohill*, "[t]he operation of state statutes of limitations thus provides a potent reason for giving federal district courts discretion to remand, as well as to dismiss, removed pendent claims." 484 U.S. at 352. Moreover, "[e]ven when the applicable statute of limitations has not expired, a remand may best promote the values of economy, convenience, fairness, and comity." *Id.* at 353. The court will remand the claims of plaintiffs Justice and Yarbor out of concern for the state statute-of-limitations issues, the values expressed in *Cohill*, the policy factors raised in *Gibbs*, and the directive in *Long* that removal statutes should be construed narrowly with doubts about the propriety of removal resolved in favor of remand. The court does not have jurisdiction over the

original complaint because of the defendants' failure to meet their burden of showing diversity jurisdiction's amount-in-controversy requirement is met.  After the dismissal of the RICO claims, there are no remaining federal claims that can sustain federal jurisdiction based on the presence of a federal question.  Finally, the court is unwilling to exercise supplemental jurisdiction over the remaining state-law claims.

**D.     Claims of Plaintiff Adams**

The defendants point out that plaintiff Adams was added to this case only with the filing of the amended complaint.  Therefore, the basis for federal jurisdiction over his causes of action is distinct from that of the other two plaintiffs: it is based solely on the presence of a federal question.  *Gibbs* presents a nearly identical situation where a federal claim and a state claim were both initially brought in federal court and the federal claim was dismissed.  *Id.* at 720-21.  The Supreme Court in *Gibbs* "conclude[d] that although it may be that the District Court might, in its sound discretion, have dismissed the state claim, the circumstances show no error in refusing to do so." *Id.* at 726, 729 (also noting that "if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well").  In accordance with *Gibbs*, now that Adams's RICO claims have been dismissed, the court will decline to exercise supplemental jurisdiction and will dismiss his remaining state-court claims.  Accordingly, the court will construe the defendants' response, DE

11

116, as also containing a motion to dismiss Adams's remaining state-law claims and grant it.

## IV. Conclusion

Accordingly,

**IT IS ORDERED** that the plaintiffs' motion to remand, DE 115, is **GRANTED IN PART**, insofar as the court will remand the remaining state-law claims of plaintiffs Justice and Yarbor, and **DENIED IN PART** as to the remaining claims of plaintiff Adams.

**IT IS FURTHER ORDERED** that the remaining claims of plaintiffs Justice and Yarbor are **REMANDED** to the Jefferson Circuit Court for resolution of the outstanding state-law claims.

**IT IS FURTHER ORDERED** that the defendants' motion to dismiss plaintiff Adams's remaining state-law claims, DE 116, is **GRANTED**.

**IT IS FURTHER ORDERED** that all remaining motions are **DENIED AS MOOT**.

This matter shall be **STRICKEN** from the active docket.

Signed on  August 25, 2008

*Jennifer B. Coffman*
Jennifer B. Coffman, Judge
United States District Court

12